IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RETZLAFF GRAIN COMPANY, INC., <br><br>Plaintiff, <br><br>vs. <br><br>JORDAN EGGLI, and CHAD NEEDHAM, <br><br>Defendants. | 8:20CV289 <br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion for Temporary Restraining Order (TRO) and Preliminary Injunction, ECF No. 2, filed by Plaintiff Retzlaff Grain Company, Inc., d/b/a RFG Logistics, Inc. (RFG). For the reasons stated below, the Motion will be denied, without prejudice to RFG's reassertion of its Motion for Preliminary Injunction.

## FACTUAL BACKGROUND

RFG is a transportation broker for agricultural products across the United States. Defendant Chad Needham was RFG's Vice President of Sales and Marketing. Defendant Jordan Eggli was one of RFG's Carrier Account Executives. While employed with RFG, both Needham and Eggli signed Confidentiality and Non-Solicitation Agreements (the "Agreements"). *See* ECF No. 4-2 at 5-8, Page ID 101-04; ECF No. 4-2 at 21-24, Page ID 117-20. In relevant part, Section 1 of the Agreements restricted Defendants from recruiting RFG's employees and from soliciting ten clients that RFG would select at the termination of each Defendant's employment. These restrictions were in place "[d]uring the term of . . . employment and for a period of twelve (12) months after . . . employment ends for any reason." ECF No. 4-2 at 5, Page ID 101; ECF No. 4-2 at 21, Page ID 117.

The Agreements also prohibited the Defendants from disclosing RFG's confidential information or trade secrets.

RFG terminated Needham for cause on July 12, 2018. On July 18, 2018, RFG sent Needham a Notice for Compliance with Confidentiality and Non-Solicitation Agreement with Retzlaff Grain Company (the "Needham Notice"). It listed ten RFG customers that he could not contact for one year; reminded him of his obligations under his Agreement; and demanded that he return confidential information. RFG also alleged that Needham took a notebook containing RFG's confidential information and demanded its return. Soon after RFG terminated Needham, he began to work for NORAG, one of RFG's competitors.

RFG alleges that, by August 2018, Needham contacted some of the customers identified in the Needham Notice. Yet RFG has not specified which customers Needham contacted. RFG also alleges that it lost "three lanes" since Needham's termination, and that Needham must have used RFG's confidential information to solicit those customers. RFG further alleges that since Needham left RFG, three RFG employees, including Eggli, joined Needham at NORAG. RFG does not specify when those employees, other than Eggli, left or when Needham recruited them.

Eggli resigned his employment with RFG on February 21, 2020, to accept a position with NORAG. He told his supervisors that he was leaving because NORAG would pay him ten thousand dollars more in annual salary. On February 27, 2020, RFG sent Eggli a Notice for Compliance with Confidentiality and Non-Solicitation Agreement with Retzlaff Grain Company (the "Eggli Notice"). It listed RFG customers that Eggli could not contact for one year and reminded him of his other obligations under his Agreement.

RFG alleges that Eggli contacted at least one of the customers identified in the Eggli Notice. RFG also alleges that a customer told RFG that each time the customer called RFG to arrange for hauling of freight, Eggli called the customer ten minutes later to try to cover the same load. RFG does not identify the customer. RFG further alleges that Eggli contacted an RFG customer three times during a single week in June 2020. RFG believes Eggli undercut RFG's pricing by using its confidential information. RFG alleges Eggli attempted to recruit RFG employees to NORAG, but RFG does not identify the employees Eggli attempted to recruit.

## DISCUSSION

Courts in the Eighth Circuit apply the factors set forth in *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc), when determining whether to issue a preliminary injunction or temporary restraining order. Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). A temporary restraining order is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Grasso Ents., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)).

**I. Threat of Irreparable Harm**

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Ents., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). A mere possibility of irreparable harm is insufficient to justify a preliminary injunction. The movant must "demonstrate that irreparable [harm] is *likely* in the absence of an injunction." *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 992 (8th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). "The absence of irreparable injury is by itself sufficient to defeat a motion for a preliminary injunction." *Chlorine Inst.*, 792 F.3d at 915 (quoting *DISH Network*, 725 F.3d at 882).

RFG broadly asserts that Defendants, acting in concert, obtained a portion of RFG's business by undercutting RFG's pricing and by showing familiarity with customers' preferences. RFG argues that similar conduct led to an injunction in *Yant Testing, Supply & Equip. Co. v. Lakner*, No. 8:20-CV-64, 2020 WL 791047 (D. Neb. Feb. 18, 2020). In *Yant*, the Court found the plaintiff demonstrated a threat of irreparable harm by presenting specific evidence that the defendant used confidential information to undercut the plaintiff's pricing. *Id.* at *3. The plaintiff provided specific examples and evidence of the nature of the defendant's contact with customers and showed that the defendant used confidential information to obtain the customers' business. *See id.* at *2-3.

While RFG claims that Needham and Eggli diverted RFG customers and employees by using RFG's confidential information, RFG has not presented concrete examples or evidence to support these allegations. It has not identified the customers

4

contacted or described the nature of the contacts. Similarly, RFG has not presented evidence as to which RFG employees Defendants contacted or the nature of the contacts. Instead, RFG broadly asserts that the way the Defendants "solicited Customers and RFG employees since [their] termination portrays both [their] knowledge and utilization of RFG Confidential Information and trade secrets in order to undercut RFG's business." Waggoner Dec. at 6, ECF No. 4-1, Page ID 95. Absent evidence or a more detailed description of the contacts, the Court cannot discern whether they were improper or whether there is any threat of continued improper contacts.

RFG also failed to demonstrate that an immediate injunction is necessary to protect confidential information. "To succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Roudachevski,* 648 F.3d at 706 (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n,* 109 F.3d 418, 425 (8th Cir. 1996)). RFG alleges that Needham began violating Section 2 of his Agreement shortly after his termination in June of 2018. Yet RFG did not seek to enjoin these alleged violations until it filed its action this week. RFG offers no explanation as to why a TRO is necessary now when it was not sought earlier. Nor does RFG provide any evidence to suggest that Eggli or Needham will make future improper contacts with RFG customers or employees.

Finally, RFG has not demonstrated that it lacks an adequate remedy at law for the alleged injury. "[E]conomic loss, on its own, is not an irreparable injury so long as the losses can be recovered." *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 915 (8th Cir. 2015) (quoting *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013)). Needham's violation of Section 1 of the Agreement occurred, if at all, in 2018 and

2019, when he was prohibited from recruiting RFG employees and soliciting selected RFG customers. No injunction can prevent past action, and Needham is no longer bound by those contractual restrictions. The only remedy available to RFG for such violations is money damages.

RFG asserts it will suffer irreparable harm unless Defendants are enjoined from soliciting RFG customers and employees. Yet, a loss of customers does not necessarily constitute irreparable harm. *See Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (citing *Gen. Motors Corp.*, 563 F.3d at 319) (affirming district court's denial of a preliminary injunction because there was a "question whether [the plaintiff's] injuries, *i.e.,* 'a loss of customers or customer goodwill,' [were] truly 'irreparable' in the sense that they could not be addressed through money damages") (internal citations omitted). Because RFG's factual allegations are vague, the Court cannot conclude that money damages would be inadequate to compensate RFG for its alleged losses, and RFG has not met its burden to show irreparable harm.

**II. Balance of Harms**

When addressing a motion for preliminary injunction, a court must also consider whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase,* 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994). A court also must consider the potential economic harm to each of the parties and to interested third parties. *Id.*

6

RFG claims that an injunction would only maintain the status quo and ensure that Defendants comply with the law.[1] However, Defendants remain subject to the terms of the Agreements and the law regardless of an injunction. Conversely, the injunction RFG seeks would have the effect of extending the time-limited mandates of the Agreements even when those mandates have expired. Based on the evidence in the record, the Court cannot infer that Defendants' actions were improper. Because RFG's evidence is vague and conclusory, it has not met its burden of showing that the balance of the harms favors issuance of an injunction.

### III. Likelihood of Success on the Merits

"In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir.1995)). With respect to this factor, it is not necessary for the movants to prove they are more likely than not to prevail, the movants "need only show a reasonable probability of success, that is, a fair chance of prevailing" on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *Dataphase*, 640 F.2d at 113.

RFG argues that it is likely to succeed on its claims for theft of trade secrets, violation of the Agreements, and misappropriation of confidential information. Yet, the evidence and factual allegations now before the Court do not demonstrate that RFG has a likelihood of success on the merits of its claims.

---

[1] *See, e.g., Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*, Case No. 5:14-CV-5262, 2017 WL 3206942, at *2 (W.D. Ark. July 28, 2017) (quoting *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987)) ("Broad language in an injunction that essentially requires a party to obey the law in the future is not encouraged and may be struck from an order for injunctive relief, for it is basic to the intent of Rule65(d) that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits.").

Although RFG ultimately may prevail on its claims at trial, it has not met its burden of demonstrating a reasonable probability that it will obtain any relief other than monetary damages. Accordingly, RFG has not demonstrated that it is likely to succeed on the merits of its claim for injunctive relief.

## IV. Public Interest

The Court must also "consider[] whether the public interest would be served by granting the movant's motion for injunctive relief." *Harden*, 938 F. Supp. 2d at 861 (citing *Dataphase*, 640 F.2d at 113). While the public has a general interest in the enforcement of contracts, that interest can be protected through an award of monetary damages, where appropriate. The public also has an interest in free commercial competition. Because RFG's allegations are vague and conclusory, the Court cannot conclude that Defendants engaged in unfair competition. Accordingly, the public interest does not weigh in favor of an injunction.

## CONCLUSION

RFG has not met its burden with respect to any of the *Dataphase* factors and, at this stage, it is not entitled to a temporary restraining order or a preliminary injunction. In accordance with the parties' discussion at the hearing on RFG's Motion, they will confer regarding an expedited discovery schedule. RFG may renew its motion for preliminary injunction if RFG believes discovery has revealed evidence to support a motion for such relief.

IT IS ORDERED:

1. The Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 2, is denied;

2. The Clerk of Court is directed to terminate the Motion that appears at ECF No. 2; and

3. If discovery reveals evidence to support a motion for preliminary injunctive relief, RFG may renew its motion for preliminary injunction.

Dated this 24th day of July 2020.

                                                    BY THE COURT:

                                                    s/Laurie Smith Camp
                                                    Senior United States District Judge