IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RETZLAFF GRAIN COMPANY, INC., | |
| Plaintiff, | 8:20CV289 |
| vs. | |
| JORDAN EGGLI, CHAD NEEDHAM, CRYSTAL KONECKY, ROBB KIGER, and NORAG LLC, | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on Defendants Jordan Eggli ("Eggli"), Chad Needham ("Needham"), Crystal Konecky ("Konecky"), Robb Kiger ("Kiger" and collectively, "Individual Defendants"), and NORAG LLC's ("NORAG" and collectively, "Defendants") Motion to Exclude Opinions of Janet Labenz and Meric Reese (Filing No. 213); Defendants' Motion to Exclude Opinions of Jerry Bui (Filing No. 208); and Plaintiff's Motion in Limine (Filing No. 217). For the reasons explained below, the motions will be denied, subject to the limitations set forth below.

### FACTUAL BACKGROUND

Plaintiff Retzlaff Grain Company, Inc. ("Plaintiff") is a transportation broker for agricultural products. The Individual Defendants were previously employed by Plaintiff and are now employed by NORAG. NORAG is Plaintiff's competitor.

After the Individual Defendants left Plaintiff's employment, Plaintiff filed this case asserting claims for alleged (1) violations of the Defend Trade Secrets Act, against all Defendants; (2) violations of the Computer Fraud and Abuse Act, against all Defendants; (3) violations of the

Nebraska Trade Secrets Act, against all Defendants; (4) Tortious Interference with Business Relationships, against all Defendants; (5) Breach of Contract, against the Individual Defendants; (6) Breach of Duty of Loyalty, against the Individual Defendants; (7) Unjust Enrichment, against all Defendants; (8) Civil Conspiracy, against all Defendants; and (9) Aiding and Abetting, against Needham and NORAG.  (Filing No. 89.)

Plaintiff disclosed its Chief Administrative, Information, and Technology Officer, Meric Reese ("Reese"), as a non-retained expert witness in this litigation.  (Filing No. 215-1.)  Reese is responsible for the oversight of Plaintiff's management information systems.  According to Plaintiff's expert disclosure, Reese is expected to testify as to the extent of business lost by Plaintiff due to Defendants' alleged conduct.  (Filing No. 215-1.)  Plaintiff's expert disclosure states that Reese's testimony is based on his knowledge and experience in the industry and his knowledge of Plaintiff's books and records.  (Filing No. 215-1.)  Reese's opinions related to business losses are detailed in Plaintiff's Impacted Lane Analysis, which was compiled from Plaintiff's books and records.[1]  (Filing No. 215-3.)

Plaintiff disclosed Ms. Janet Labenz ("Labenz") as a retained expert expected to testify regarding the extent of financial losses suffered by Plaintiff due to Defendants' alleged wrongful conduct.  (Filing No. 215-1; Filing No. 220-3.)  Labenz's report was to analyze (1) lost profit damages sustained due to loss of freight business from specific carriers formerly managed by Needham; (2) lost profit damages sustained due to loss of freight business from specific shippers formerly managed by Needham; (3) lost profit damages sustained due to loss of freight business from specific shippers formerly managed by Kiger; and (4) lost profit damages sustained due to loss of freight business from carriers formerly managed by Eggli. The report assumes that Plaintiff suffered a decline in business volume and revenue due to the actions of the Individual Defendants as alleged in the second amended complaint.  (Filing No. 220-3.)  Labenz does not have an opinion regarding the proximate cause of any of the losses claimed by Plaintiff.  (Filing No. 184-13.)

---

[1] Defendants explained in their briefing that "Shippers" are companies that need products transported from one location to another. "Carriers" are trucking companies that provide transportation and delivery of a shipper's product. "Loads" are the number of trips made for carriers and shippers.  Loads that travel from one specific origin to one specific destination on a frequent basis are grouped together and described as "Lanes."  (Filing No. 214, at CM/ECF p. 3.)

To perform her analysis, Labenz reviewed the "Master Load Data File" created by Plaintiff which purports to show revenue, gross profit, sales representatives, and dates for all loads by shippers, carriers, and lanes. Labenz then reviewed the quarterly revenue, profit and number of loads and lanes for the designated loads and designated lanes managed by Needham, Kiger, and Eggli. After she reviewed these materials, Labenz determined the point at which business volume and revenue, and associated profits began to decline for the designated loads and designated lanes, and compared the profit decline date with Needham, Kiger and Eggli's departure dates. The report states Labenz considered external factors that could have impacted Plaintiff's revenue and profitability but found no indication Plaintiff suffered lost profits due to general economic downturns, the COVID pandemic, industry pricing or other general factors. (Filing No. 220-3.) Labenz concluded that Plaintiff experienced a financial loss due to the decline in revenue and profits commensurate with the timing of Needham, Kiger and Eggli's cessation of employment. (Filing No. 220-3.)

Jerry Bui ("Bui") was retained by Plaintiff to provide opinions as a digital forensics expert. (Filing No. 215-1.) Bui is a certified fraud examiner who will testify regarding his forensic examination of computers and computer storage systems utilized by the Individual Defendants. (Filing No. 184-15.) Bui examined Eggli's desktop and cell phone, as well as Needham's desktop. (Filing No. 184-15.) Needham's cell phone was not analyzed because it had been factory reset. (Filing No. 184-15.) Kiger's desktop was not examined because the device had been wiped and redeployed to another employee by Plaintiff. (Filing No. 184-15.)

Defendants identified David Pace ("Pace") to testify as a non-retained expert witness. (Filing No. 220-1.) Pace has been the Chief Financial Officer at NORAG since 2009 and holds a minority equity ownership in the company. (Filing No. 220-2.) Pace has a bachelor's degree in accounting and is a certified public accountant. (Filing No. 220-2.) He also has approximately twelve years of experience in freight brokerage accounting. (Filing No. 220-1.) Defendants' expert disclosure indicates Pace is expected to testify about the reports and analysis he has reviewed from Plaintiff regarding the alleged impact of employee turnover, lost business, and damages asserted by Plaintiff. (Filing No. 220-1.) According to the disclosure, he is also expected to testify as to his own opinions regarding alleged damages, and the state of the market and market practices for bulk commodity freight business in the Midwest. (Filing No. 220-1.)

3

Defendants have now moved to exclude the testimony of Labenz, Reese and Bui. Plaintiff has moved to preclude Pace from offering expert testimony in this case.

**DISCUSSION**

Federal Rule of Evidence 702 and *Daubert* govern the admissibility of expert testimony and give the Court a gatekeeping responsibility to ensure that all expert evidence is relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *United States v. Merrell*, 842 F.3d 577, 582 (8th Cir. 2016). Rule 702's gatekeeping requirement has been reduced to a three-part test. "First, the testimony must be useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be relevant. Second, the expert must be qualified to assist the finder of fact. Third, the testimony must be reliable or trustworthy in an evidentiary sense." *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021).

Reliability of an expert opinion involves consideration of "(1) whether the expert's theory or technique can be or has been tested, (2) whether the theory or technique has been subjected to peer review or publication, (3) the known or potential rate of error of the theory or technique, and (4) whether the technique or theory is generally accepted." *Id*. Other considerations recognized since *Daubert* include "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Id*. (quotation omitted). These factors are not exhaustive, and a court must evaluate the reliability of expert testimony based on the facts of the case. *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009).

Courts must keep in mind, however, that "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. The rule clearly is one of admissibility rather than exclusion." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted). Therefore, "exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (quotation omitted). The proponent of the expert

testimony bears the burden of proving its admissibility by a preponderance of the evidence. *Lauzon*, 270 F.3d at 686.

### 1. Defendants' Motion to Exclude Opinions of Janet Labenz and Meric Reese

#### A. Janet Labenz

Defendants are not challenging Labenz's qualifications or calculations, per se, but instead argue that she failed to include significant numbers and variables in her analysis. In particular, Defendants complain Labenz did not differentiate between losses caused by Defendants' alleged wrongful conduct, and losses attributable to other non-wrongful factors—such as permissible competition, losses due to competition from other logistics companies, losses due to COVID and/or market trends, loss of key sales employees, and the level of experience of Plaintiff's other employees who assumed accounts after the Individual Defendants left.

Labenz's report indicates that she did consider some factors identified by Defendants. Her report states she found "no indication [Plaintiff] suffered lost profits as a result of general economic downturns, the COVID pandemic, industry pricing or other general factors." (Filing No. 220-3.) However, even if these things were not considered, or considered in the depth Defendants believe they should have been, the Court disagrees that this renders Labenz's opinion inadmissible. *See S&H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 552 (8th Cir. 2022) (finding that the omission of certain factors from an expert's analysis affected only the weight of the testimony, not its admissibility). If this were the case, "expert testimony on lost profits would rarely be admissible because every model relies on assumptions and no model can account for every conceivably relevant factor." *Id*. Also, Labenz was not retained to provide an opinion regarding the *cause* of Plaintiff's claimed losses. Rather, she was asked to assume any losses were attributable to Defendants' alleged conduct. Therefore, if Labenz did not consider the impact of the factors identified by Defendants (such as COVID, etc.) in her analysis, this is hardly surprising—they are immaterial to what she was retained to examine.

Further, it was not improper for Labenz to assume losses were caused by Defendants' alleged wrongful conduct, or to assume Plaintiff experienced the declines purportedly reflected in the Impacted Lane Analysis. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the

5

factual basis for the opinion in cross-examination." *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 864 (8th Cir. 2004); *United States v. Perry*, 61 F.4th 603, 606 (8th Cir. 2023) ("The question of the expert's credibility and the weight to be accorded the expert testimony are ultimately for the trier of fact to determine") (quoting *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990)).

It remains up to Plaintiff to show that the assumptions underlying Labenz's opinions are factually founded, and Defendants will have the opportunity to challenge Labenz's assumptions through cross-examination. An opposing party's "mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007).

Defendants also contend Labenz's opinions regarding lost profits should be excluded because they are contrary to the facts of this case. Defendants argue Labenz's opinion is based on the incorrect assumption that all the business she analyzed was lost after the Individual Defendants stopped working for Plaintiff, and that the assumption that Plaintiff did not have actual profits for all that time is false. (Filing No. 184-10.) Plaintiff maintains that Labenz *did not* make this assumption in performing her analysis. Again, disputes about the accuracy of facts assumed by an expert in rendering his/her opinion are those speaking to weight and credibility—not admissibility. The question of whether Labenz made this assumption, and the impact (if any) of this assumption on the issue of damages, can be sorted out at trial. Therefore, Defendants' motion to exclude Labenz's testimony will be denied.[2]

### B. Meric Reese

Reese is Plaintiff's Chief Administrative, Information, and Technology Officer. Plaintiff's expert disclosure states Reese is expected to testify as to the extent of business lost by Plaintiff due to Defendants' alleged wrongful conduct. Defendants argue Reese is not qualified to serve as an

---

[2] Defendants also argue Labenz's opinion incorrectly assumes an anticipated trial date of December 31, 2024—and therefore contains inflated damages. Plaintiff represents that Labenz will revise her report for trial to reflect her gross profit loss calculation as of the trial date. Therefore, Defendants' argument on this point is moot.

expert witness. Defendants further argue that any testimony by Reese as to lost gross revenue, as opposed to lost net profit, would be irrelevant and confusing.

In response to Defendants' motion, Plaintiff has stated it no longer intends to call Reese as an expert witness. (Filing No. 226.) Instead, Plaintiff plans to call Reese as a lay witness to testify/opine regarding Plaintiff's revenue and volume losses, as reflected in Plaintiff's books and business records. Plaintiff asserts Reese will offer testimony establishing Plaintiff's experience before and after the departure of the Individual Defendants, particularly regarding the decline in customer revenues and carrier volume in certain customer and carrier lanes previously assigned to the Individual Defendants. Plaintiff intends to have Reese lay the foundation for the Impacted Lane Analysis data that was supplied to Labenz.[3]

Federal Rule of Evidence 701 "provides that if a witness is not testifying as an expert, then any testimony by the witness expressing his or her opinion or inferences is limited to those that are rationally based on the witness's perception and helpful to understanding the witness's testimony or determining a fact in issue." *U.S. Salt, Inc. v. Broken Arrow, Inc.,* 563 F.3d 687, 690 (8th Cir. 2009). "Personal knowledge or perceptions based on experience" is sufficient foundation for such testimony. *In re Air Crash at Little Rock Arkansas on June 1, 1999,* 291 F.3d 503, 515–16 (8th Cir. 2002). "Perceptions based on industry experience is a sufficient foundation for lay opinion testimony." *U.S. Salt, Inc.,* 563 F.3d at 690 (quotation omitted). However, the opinion of a lay witness must not be based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Determining whether a witness is offering an expert or lay opinion requires a case-by-case analysis of both the witness and the witness's opinion. *United States v. Smith,* 591 F.3d 974, 982–83 (8th Cir. 2010).

Plaintiff argues Reese may offer opinion as a lay witness because his testimony is rationally based on his perception and familiarity with Plaintiff's books and records pertaining to customer lanes. Plaintiff claims Reese's opinion is not based on scientific, technical, or specialized knowledge. The determination of whether Reese's testimony qualifies as a proper lay opinion under Rule 701 will be decided at trial if there is an evidentiary objection to particular lines of questioning or responses. The Court will not engage in guesswork to determine the questions Reese

---

[3] Reese did not actually prepare the Impacted Lane Analysis, but he assisted in collecting the data for the document. (Filing No. 184-3.)

7

will be asked, or the responses Reese may provide. Therefore, Defendants' motion to exclude Reese's expert testimony will be denied as moot based on Plaintiff's representation that Reese will not testify as an expert witness. However, to be clear, given Plaintiff's advisement that Reese will not be called as an expert, Reese will be limited to providing appropriate lay witness testimony.

### 2. **Defendants' Motion to Exclude Testimony of Jerry Bui**

Defendants are not challenging Bui's expert qualifications, methods, or results. Rather, Defendants argue Bui's opinions should be excluded because they would not be helpful to the jury and are a "waste of time." Defendants contend Bui cannot ascertain any useful conclusions based on the evidence available.

Bui examined the desktop computers that Plaintiff issued to Needham and Eggli during their employment, as well as their cell phones. ([Filing No. 184-14](#).) Bui was able to retrieve files, emails, documents and spreadsheets that had been stored on the computers. ([Filing No. 184-15](#).) Bui was also able to extract SMS/MMS messages from Eggli's cell phone. ([Filing No. 184-15](#).) Bui was unable to image Needham's cell phone because Needham factory reset it before returning it to Plaintiff. ([Filing No. 184-14](#).)

As part of his investigation, Bui performed a forensic "Red Flag Report" on the devices to identify any recent or unusual activity. ([Filing No. 184-15](#).) The Red Flag Report indicated that a USB removable hard drive had been attached to Eggli's computer less than a week before he resigned from his position with Plaintiff. ([Filing No. 184-15](#).) Bui was unable to ascertain what information was copied off the desktop. ([Filing No. 184-15](#).) The Red Flag Report also showed there had been an operating system installation the day the drive was plugged into Eggli's computer. ([Filing No. 184-15](#).) Bui opined in his report that there were no prior operating system installation dates, so he believed "this was a fresh re-install six days prior to Mr. Eggli's resignation on 2/21/2020, eliminating all the valuable forensic artifacts that might have existed previously." ([Filing No. 184-15](#).)

Defendants argue Bui should not be allowed to testify about undisputed facts—such as the fact that Needham's cell phone had been reset and that someone plugged a drive into Eggli's

computer shortly before his resignation. Defendants contend no expert testimony on these points is necessary because it is within the ordinary knowledge of lay-persons.

Defendants also contend Bui's testimony regarding the hard drive and installation update on Eggli's computer would confuse the jury, cause it to speculate, and prejudice Defendants. Defendants maintain there are several problems with Bui's opinion pertaining to these matters. First, Defendants assert Bui testified that there *had* been a prior installation on Eggli's computer, contrary to the statement in his expert report. Next, Defendants maintain Bui's report confusingly suggests that Eggli's computer was wiped—when it was not. Finally, Defendants complain Bui's opinion on these subjects is useless because he does not know who performed the installation, who plugged the drive into the computer, or what information was put on the drive.

Although Bui's opinion may touch on some undisputed facts (such as why Needham phone was not examined), this does not render his expert opinion unhelpful and inadmissible. Bui's testimony would help explain how data was retrieved from the devices and the types of data that was retrieved. His testimony could also aid the jurors in understanding the Red Flag Report and any forensic artifacts on the examined devices. Bui's expert testimony is relevant, and there is no dispute over its reliability. Therefore, Defendants' motion to exclude Bui's expert testimony will be denied.

**3. Plaintiff's Motion in Limine to Bar Expert Testimony of David Pace**

Plaintiff seeks to bar any expert or rebuttal testimony from Pace, who is an owner and the Chief Financial Officer of NORAG. Pace was identified by Defendants as a non-retained expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2). As summarized by Plaintiff, Pace testified that (1) Plaintiff failed to mitigate damages by not reassigning customers to qualified personnel; (2) any loss or damage suffered by Plaintiff was not caused by NORAG; and (3) he disagrees with the assumptions Labenz was asked to make in formulating her damages calculation. (Filing No. 220-2.)

Plaintiff first argues Pace's testimony should be barred because Defendants did not adequately disclose Pace's opinions. Federal Rule of Civil Procedure 26(a)(2) requires litigants to disclose the identity of any witness it may use at trial to present expert testimony. Fed. R. Civ.

9

P. 26(a)(2). For non-retained expert witnesses, such as Pace, parties must disclose the subject matter on which the witness is expected to present expert opinion testimony and a summary of the facts and opinions to which the witness is expected to testify. *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 644 (8th Cir. 2022) (quotation omitted). The disclosure "need not outline each and every fact to which the non-retained expert will testify or outline the anticipated opinions in great detail," but "it should provide a brief account that states the main points of the entirety of the anticipated testimony." *Vanderlaan v. Ameriprise Auto & Home Ins.*, No. 20-CV-00191, 2021 WL 4441518, at *6 (D. Colo. Sept. 28, 2021) (quotation omitted). The core purpose of disclosing non-retained experts under Rule 26(a)(2)(C) is to "obviate the danger of unfair surprise regarding the factual and opinion testimony of the non-retained expert." *Seeley v. Home Depot U.S.A., Inc.*, No. 17-CV-00584-PAB-NYW, 2018 WL 4275375, at *4 (D. Colo. Sept. 7, 2018).

Here, it is apparent that Defendants' expert disclosure is somewhat lacking in detail. The disclosure provides an adequate advisement of the subject matters on which Pace will testify. The disclosure states Pace will testify about the reports and analysis he has reviewed from Plaintiff regarding the alleged impact of employee turnover, lost business, and damages asserted by Plaintiff. (Filing No. 220-1.) It also states Pace is expected to testify as to his own opinions regarding alleged damages, as well as the state of the market and market practices for bulk commodity freight business in the Midwest. (Filing No. 220-1.) However, the disclosure does not identify Pace's opinions or the factual basis for his opinions.

Defendants' failure to provide a sufficient disclosure brings them within the ambit of Federal Rule of Civil Procedure 37. When a party fails to provide a sufficient disclosure under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). In determining how to remedy a party's insufficient disclosure of an expert, a court should consider, among other things, "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). "When a party fails to provide information or identify a witness in compliance with Rule 26(a) or (e), the district court has wide discretion to

fashion a remedy or sanction as appropriate for the particular circumstances of the case," but "the exclusion of evidence is a harsh penalty and should be used sparingly." *Id*.

The deficiencies in Defendants' expert disclosure do not warrant exclusion of Pace's testimony. Plaintiff was aware of Pace and deposed him regarding his opinions. Plaintiff was able to outline Pace's opinions in its briefing on this motion—so Plaintiff obviously understands what Pace's opinions are and would not be prejudiced if his testimony were allowed. Plaintiff's understanding of Pace's testimony is highlighted by the fact that Plaintiff did not attempt to clarify Pace's opinions by requesting additional discovery. Here, there is no danger of unfair surprise, and no reason to take the drastic step of excluding Pace's opinion based on partial shortcomings with the expert disclosure. Simply put, the lack of detail in the disclosure was harmless. However, Defendants still must be held to fully comply with the rules. Therefore, the Court will order Defendants to provide a disclosure that complies with Rule 26(a)(2) within fourteen days of this Memorandum and Order.

Plaintiff next argues Pace should not be allowed to testify as an expert because his opinion that Labenz relied on erroneous assumptions of fact is an improper subject for expert opinion. Plaintiff maintains this opinion is not expert is nature, as it is not based on any scientific or specialized knowledge. The Court agrees that testimony that only serves to attack or opine on the truthfulness of facts Labenz was asked to assume is not appropriate expert testimony. "An expert may not opine on a factual matter on which the jurors are entirely capable of making a determination or opinion on witness credibility." *Roohbakhsh v. Bd. of Trustees of Nebraska State Colleges*, No. 8:17CV31, 2019 WL 5653448, at *8 (D. Neb. Oct. 31, 2019). Expert testimony cannot "merely tell the jury what result to reach." *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) (quotation omitted). Pace will not be permitted to offer expert opinion on the ultimate truthfulness of *any* disputed fact—not just those pertaining to Labenz—and any such testimony will be excluded or stricken following a proper evidentiary objection at trial. This is not to say, however, that Pace will be precluded from offering expert testimony about how his *expert analysis* refutes underlying factual assumptions or how his analysis shows that Labenz's methodology/determination was deficient or flawed. This is a critical distinction.

11

Plaintiff also argues Pace's opinion about mitigation lacks sufficient factual foundation, rendering it unreliable and inadmissible. Plaintiff contends Pace's opinion hinges upon the unfounded conclusion that Plaintiff did not have employees take over the business that Plaintiff alleges it lost. It is well-established that expert testimony is inadmissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case," *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006), such that it is "so fundamentally unsupported that it can offer no assistance to the jury." *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006) (quotation omitted).  However, the Court is unable to conclude that Pace's expert opinion is so fundamentally lacking in substance that it should be wholly excluded.  As Pace explained in his deposition, in formulating his expert opinion, he reviewed extensive amounts of documentation and used his experience with freight brokerage accounting to perform a pivot table analysis.  Any perceived weaknesses in Pace's opinion, including the accuracy of underlying facts, can be explored during cross-examination at trial. See *In re Bair Hugger*, 9 F.4th at 778 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of addressing shaky but admissible evidence") (internal quotation omitted).

Finally, Plaintiff argues Pace's opinion is unreliable because he has a financial interest in the outcome of this case. Defendants dispute that Pace is financially motivated because his minority interest in NORAG is subject to a purchase agreement with a fixed price (Filing No. 225-1). Still, this does not alter the fact that, as an owner, Pace has an interest in NORAG's success, financial or otherwise.  The Court will not, however, wholly exclude Pace's testimony based on this circumstance. The extent of Pace's financial interest in the outcome of this case can be explored through cross-examination and the jury can make its assessment of the credibility of Pace's testimony from there. See *American Modern Home Ins. v. Thomas*, No. 4:16CV215, 2018 WL 4404723, at *5 (E.D. Mo. Sept. 17, 2018) ("Questions regarding . . . bias and credibility are matters to be resolved by the jury, including the extent to which any financial interest in the outcome of the case may affect [a witness's] opinions").  Therefore, Plaintiff's motion to exclude Pace's expert testimony will be denied.

Accordingly,

**IT IS ORDERED:**

1. Defendants' Motion to Exclude Opinions of Janet Labenz and Meric Reese (Filing No. 213) is denied, except that Reese will be limited to providing lay witness testimony in this case.
2. Defendants' Motion to Exclude Opinions of Jerry Bui (Filing No. 208) is denied.
3. Plaintiff's Motion in Limine (Filing No. 217) pertaining to David Pace is denied insofar as it seeks to entirely preclude Pace's expert testimony. Pace's expert testimony will be limited as set forth in this Memorandum and Order.
4. Defendants shall provide an expert disclosure for Pace in compliance with Rule 26(a)(2) within fourteen (14) days of this Memorandum and Order.

Dated this 4th day of October, 2024.

BY THE COURT:

*Susan M Bazis*

Susan M. Bazis
United States District Judge